IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Eddie Bell (#21574-424), | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 06 C 4069 |
| Lieutenant Reusch, Officer Wright, and Officer Henderson, | ) ) ) ) | Judge Marvin E. Aspen |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Eddie Bell a federal prisoner incarcerated at Metropolitan Correctional Center (MCC), filed this civil rights action against defendants Lieutenant Reusch, Officer Wright, and Officer Henderson. Plaintiff alleges that the Defendants acted with deliberate indifference for failing to protect plaintiff from an attack by a fellow inmate. Plaintiff suffered a severe bite to his thumb. Defendants filed a motion for summary judgment, arguing that Plaintiff failed to exhaust administrative remedies and that the defendants are entitled to qualified immunity. Plaintiff has filed a response. For the following reasons, the Court grants the motion for summary judgment on the exhaustion issue. The Court does not address the qualified immunity issue.

**I.      Summary Judgment Standard:**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). In determining the existence of a genuine issue of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When

addressing a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

If the moving party meets its burden, the nonmoving party has the burden "to go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if a reasonable finder of fact could return a decision for the nonmoving party based upon the record. *See Anderson*, 477 U.S. at 252; *Insolia v. Phillip Morris Inc.*, 216 F.3d 596 (7th Cir. 2000). With respect to whether an inmate exhausted administrative remedies, the Court, and not a jury, must resolve factual issues relating to the exhaustion issue. *Pavey v. Conley*, __ F.3d __, 2008 WL 2277494, *2 (7th Cir. 2008).

**II.   F**<u>acts</u>**:**

The pleadings of this case show the following facts. On December 15, 2004, Officer Wright placed Plaintiff in a cell with Jeromino Ayala at Metropolitan Correctional Center. Fifteen minutes later, Officers Wright and Henderson were called to the cell and witnessed Ayala becoming combative toward Plaintiff. Wright and Henderson state that they called Lieutenant Reusch and informed him of the situation, and that Reusch responded by coming to the cell. The Defendants state that Ayala was jumping up and down on the toilet, that Reusch ordered Ayala to come down and be restrained, that Reusch called for backup and for the cell door to be opened; and that, while the officers waited for backup, Ayala charged Plaintiff and bit his thumb. Reusch ordered for the immediate opening of the cell door; he and Officer Wright restrained Ayala; and Plaintiff requested and received medical attention for his thumb. [DE 39, Exhs. A & B (affidavits of Wright and Reusch)] The medical report

shows that the incident occurred at 8:00 p.m., that a response for treatment was made at 8:40 p.m., and that Plaintiff was treated for a bite wound to his thumb. The medical report indicates that Plaintiff received a tetanus shot, cleansing of the wound, Tylenol, a lab test for Hepatitis, an offering of an HIV test, and "minor first aid." [DE 39, Exh. C].

On January 28, 2005, Plaintiff was transferred from MCC to Kankakee County Jail. Plaintiff returned to MCC on May 27, 2005. On June 8, 2005, he was transferred to the Federal Correctional Institution in Waseca, Minnesota. On July 14, 2005, he returned to MCC, where he remained until his recent transfer in 2008 to a federal prison in Leavenworth, Kansas. [DE 39, Exh. D].

Attached to Defendants' Rule 56.1 Statement is an affidavit from MCC attorney advisor Richard Hansford, who states that one of his duties is to oversee MCC administrative procedures and that he has access to inmate grievance records. According to Hansford, Bell's administrative record shows that he did not file a request for administrative remedy about the December 15, 2004, incident until April of 2006. That request was rejected as untimely, and Plaintiff's appeals to the regional and central offices were denied in May and June of 2006. [DE 39, Exh. D]. According to Plaintiff, he filed BP-8 and BP-9 grievances before his January 28, 2005, transfer from MCC to Kankakee County Jail, and that he never received a response. [DE 1, p.3; DE 25, p.2]. Attached to his complaint, are copies of: a request for informal resolution dated March 16, 2006; a grievance dated April 17, 2006; a regional appeal filed on May 2, 2006, and a central office appeal filed on May 29, 2006. [DE 1, Exhs. 5(2), 5(4), 5(6), and 5(7)]. Plaintiff's grievance was denied as untimely, and his appeals were denied. [DE 1, Exhs. 5(1), 5(3), 5(5)]. Plaintiff stated in these grievances, as he does throughout his pleadings, that he never received a response to his earlier filed BP-8 and BP-9 requests for administrative relief. Plaintiff maintains that he was unable to pursue his request for administrative remedies following his transfer from MCC.

### III.     Requirement to Exhaust Administrative Remedies:

The Prisoner Litigation Reform Act requires that, "[n]o action shall be brought with respect to prison conditions under section 1983 ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted). Exhaustion is necessary even if the prisoner is requesting relief that the relevant administrative review board has no power to grant, such as monetary damages. *Dole v. Chandler*, 438 F.3d 804, 808-09 (7th Cir. 2006).

Exhaustion of available administrative remedies "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 90 (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Proper use of the prison grievance system requires a prisoner "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *Dole v. Chandler*, 438 F.3d at 809; *see also Woodford v. Ngo*, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules"). If the prisoner fails to properly use the prison's grievance process, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be considered indefinitely unexhausted. *Pozo*, 286 F.3d at 1025; *see also Woodford*, 548 U.S. at 89-90.

A prisoner's failure to timely file a grievance in accordance with the prison's grievance procedures constitutes a failure to exhaust properly. *See Woodford*, 548 U.S. at 87-90. A prisoner's failure to appeal the denial of a grievance and pursue his claim at each level of available administrative review constitutes a failure to exhaust. *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002). Furthermore, if the grievance system allows and instructs for an appeal if a prisoner receives no response to a grievance, the prisoner may be required to continue with the grievance process to its conclusion to exhaust administrative remedies. *See Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir.2005) (prisoner not required to appeal when the institution's grievance procedures were silent as to what an inmate

should do when he receives no response to a grievance filed at the initial level of a multi-step review process).

The grievance procedures applicable to Plaintiff included an initial informal resolution stage and a three-step grievance process. Under 28 C.F.R. § 542.13, "an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy. Each Warden shall establish procedures to allow for the informal resolution of inmate complaints." Following the completion of informal resolution stage, the inmate may file an Administrative Remedy Request using a BP-9 form. The inmate should file a BP-9 form within 20 days of the date of the event giving rise to the grievance, but the inmate may obtain an extension by showing a valid reason. 28 C.F.R. § 542.14. If the Warden denies the grievance, the following steps apply:

> An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response. When the inmate demonstrates a valid reason for delay, these time limits may be extended. Valid reasons for delay include those situations described in § 542.14(b) of this part. Appeal to the General Counsel is the final administrative appeal.

28 C.F.R. § 542.15(a).

Section 542.18 provides that, with respect to a BP-9 form, "a response shall be made by the Warden or CCM within 20 calendar days," which may be extended 20 days. "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

**IV.  Analysis:**

Viewing all factual disputes in favor of Plaintiff, the record of this case indicates that he began the administrative review process by filing a BP-8 and a BP-9 request for administrative relief, possibly

before his transfer to Kankakee County Jail on January 28, 2005. Even assuming that he timely filed a request for informal resolution and the first step of the grievance process, the record shows that he did not seek to restart the administrative review process until March of 2006, fourteen months later, and eight months after his July 14, 2005, return to MCC from the federal facility in Minnesota. Plaintiff should have proceeded with the administrative review process either while he was in the Kankakee County Jail or, at least, within a reasonable amount of time after his return to MCC. However, Plaintiff did not seek to continue with the administrative review process, as instructed by the federal administrative guidelines. Nor did he seek, within a reasonable period of time, to start the administrative remedy process anew as an untimely filed grievance. Rather, he waited until March of 2006 to restart the administrative review process.

Even if Plaintiff properly began the administrative review process, his actions after not receiving a response resulted in a misuse or untimely use of the federal administrative review process. Plaintiff's failure to use properly the steps held out by federal prisons prevented the agency from addressing the merits of his complaint. *Woodford*, 548 U.S. at 90; *Pozo*, 286 F.3d at 1024.

Although the exhaustion requirement may be excused if a prisoner's grievance is unanswered and "the regulations did not instruct a prisoner on what to do when prison officials did not answer his grievance within the time frame prescribed in the regulations," *Dole v. Chandler*, 438 F.3d at 81(*citing Brengettcy*, 423 F.3d at 682, the procedures for federal inmates seeking administrative review are not similarly lacking in instructions. *See* 28 C.F.R. § 542.18. Where state prison regulations were silent as to how a prisoner should proceed in *Dole* and *Brengettcy*, in the present case, § 542.18 provides that a federal inmate who "does not receive a response within the time allotted for reply, including extension, . . . may consider the absence of a response to be a denial at that level." Plaintiff provides no reason for waiting until March of 2006 to resume or restart his administrative review process.

Given Plaintiff's failure to exhaust administrative remedies in accordance with the federal regulations, the Court dismisses this case. *See Woodford*, 548 U.S. at 90. The Court does not address the issue of qualified immunity.

## V. Conclusion:

For the reasons stated above, the Court grants Defendants' motion for summary judgment. The clerk is directed to enter judgment in favor of Defendants in accordance with Fed. R. Civ. P. 56(c). This case is terminated. If Plaintiff wishes to appeal this decision, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Plaintiff chooses to appeal, he will be responsible for the $455 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998).

ENTER: _____
**Marvin E. Aspen**
**United States District Court Judge**

**DATE: June 18, 2008**